UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

In re JONES SODA COMPANY
SECURITIES LITIGATION

This order related to: All Actions

Case No. C07-1366RSL

ORDER REGARDING
APPOINTMENT OF LEAD
PLAINTIFF AND LEAD COUNSEL

This matter comes before the Court on the motions of various plaintiffs to be appointed as lead plaintiff in these consolidated proceedings.

Pursuant to 15 U.S.C. § 78u-4(a)(3)(A)(I), plaintiff in the action entitled Saltzman v. Jones Soda Company, C07-1366RSL published a notice of pendency of the action over the *Business Wire* on September 4, 2007. Pursuant to 15 U.S.C. §§ 78u-4(a)(3)(A)(i)(II), five timely applications to be appointed lead plaintiff were filed by the following groups: (1) Scott Ham, Nancy Heinrich, and Don Stubblefield (collectively, the "Ham Group"); (2) Assefa Judah and Nicholas Monastero (the "Judah Plaintiffs"); (3) James D. Stevens, Jr., who subsequently withdrew his motion; (4) Gorman Smith, Willis Ratliff, and Jordan Theodore (the "Smith Group"); and (5) Robert Burrell, Maryjane Burrell, and Brian

ORDER REGARDING APPOINTMENT
OF LEAD PLAINTIFF AND LEAD COUNSEL - 1

Burrell (collectively, the "Burrell family"), along with Ron Brejtfus, Robert Dail, Jr., and Eric Jankowski (collectively, the "Burrell Group").

At this stage of the proceeding, the Court accepts the allegations of the multiple complaints as true. The Court evaluates the typicality of plaintiffs' claims and the adequacy of their representation in light of those allegations.

The alleged losses suffered by the Burrell Group exceed $1 million and are significantly greater than the losses suffered by any of the other proposed lead plaintiff groups. The Burrell Group also satisfies the requirements of Rule 23. The Private Securities Litigation Reform Act ("PSLRA") inquiry on that issue focuses principally on the elements of typicality and adequacy. See, e.g., Pirelli Armstrong Tire Corp. Retiree Med. Benefits Trust v. Labranche & Co., 229 F.R.D. 395, 411 (S.D.N.Y. 2004). The Burrell Group plaintiffs' certifications show that they have reviewed the complaint, adopted the allegations therein, and are willing to serve as representatives of the class. The claims of the plaintiffs in the Burrell Group are typical of the claims of other plaintiffs in the proposed class. They allege that their losses occurred as a result of the same wrongful conduct alleged by other plaintiffs. The Burrell Group's claims are based on the same legal theories as other plaintiffs' claims. The Burrell Group has retained adequate counsel. The Court finds that the Burrell Group satisfies the requirements of 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I). For these reasons, the Court affords the Burrell Group a rebutable presumption that it is the most adequate plaintiff group to prosecute the consolidated actions. 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I)(bb).

The presumption may be rebutted upon proof by a member of the purported plaintiff class that the movant: (aa) will not fairly and adequately protect the interests of the class, or (bb) is subject to unique defenses that render such plaintiff incapable of

ORDER REGARDING APPOINTMENT
OF LEAD PLAINTIFF AND LEAD COUNSEL - 2

adequately representing the class.  15 U.S.C. § 78u-4(a)(3)(B)(iii)(II).  The claims of the Burrell Group do not appear to be subject to unique defenses.

The Ham Group argues that the Burrell Group plaintiffs are not adequate representatives because their counsel, Kahn Gauthier Swick, LLC ("KGS") allegedly disseminated a misleading press release designed "to look like a statutorily mandated notice under the PSLRA."  Ham Group's Opposition at p. 1.  However, the members of the Burrell Group have stated that they were not misled by KGS's press release.  The Ham Group also argues that the Burrell Group plaintiffs are inadequate because they have allowed their lawyers to engage in improper tactics.  The client solicitation, however, occurred before the Burrell Group engaged KGS, so plainly those plaintiffs did not "permit" the conduct alleged.  Although the Ham Group argues that KGS's solicitation of clients was improper, such solicitation unfortunately is not unusual in this area.  The Burrell Group plaintiffs do not appear to have interests antagonistic to other plaintiffs, and they have a sufficient interest in the outcome of the litigation to ensure vigorous advocacy.  Finally, the Ham Group argues that KGS copied, nearly verbatim, another plaintiff's complaint and filed it on behalf of plaintiff Lael Banner.  That allegation, however, is better considered under the provisions for selection of lead counsel.[1]  Accordingly, the Ham Group has not provided proof sufficient to rebut the presumption.

However, based on the current record, the Court is not yet satisfied that the Burrell Group, *as a group*, is the most adequate plaintiff.  Although the Burrell Group contains three members of the same family, it also includes three unrelated individuals who apparently did not know each other prior to this lawsuit.  The Burrell family and the other

---

[1] See, e.g., Mayo v. Apropos Tech., Inc., 2002 U.S. Dist. LEXIS 1924 at *14 (N.D. Ill. 2002).

ORDER REGARDING APPOINTMENT
OF LEAD PLAINTIFF AND LEAD COUNSEL - 3

members of the group appear to live in different states. Although the members "have been put in touch with each other," that contact has been limited and orchestrated by counsel. Declaration of Reed Kathrein, (Dkt. #19) at ¶ 3. A loose group of investors whose relationship was forged only in an effort to win appointment as lead plaintiff has no real cohesiveness, is less likely to be in control of the litigation, and is subject to all of the obstacles that normally make group action difficult. Even though the Burrell Group consists of only six individuals, their decision making requires either (a) levels of coordination, negotiation, and collective action which far exceed that which would be necessary of an individual litigant or (b) undue control by their lawyer-representatives. In addition, there appears to be no need to appoint the whole group as lead plaintiff. Their motion states that the Court may appoint the group, or any individual member thereof, as lead plaintiff. The Burrell family, with losses exceeding $441,000, has experienced losses greater than any other individual or group, except the Burrell Group as a whole. The Burrell family also meets the requirements of Rule 23 for the same reasons set forth above regarding the Burrell Group. Although there is currently no evidence on the issue, presumably, the Burrell family would make a more cohesive plaintiff group than the Burrell Group. Alternatively, Robert Burrell has suffered losses in excess of $358,000, which is more than any other individual plaintiff or group that has filed a competing motion, and he also satisfies the requirements of Rule 23. At this point, however, the record is insufficient to determine whether the Burrell Group, the Burrell family, or Robert Burrell individually would be the most adequate plaintiff. Accordingly, the Court will hold a hearing to determine that issue.

Pursuant to 15 U.S.C. § 78u-4(a)(3)(B)(v), the Burrell Group, the Burrell family, and Robert Burrell have selected the law firms of Hagens Berman Sobol Shapiro LLP and

ORDER REGARDING APPOINTMENT
OF LEAD PLAINTIFF AND LEAD COUNSEL - 4

KGS to be Co-Lead Counsel.  The PSLRA provides that once the lead plaintiff is selected, it "shall, subject to the approval of the court, select and retain counsel to represent the class."  15 U.S.C. § 78u- 4(a)(3)(B)(v).  The decision to approve counsel selected by the lead plaintiff is a matter within the discretion of the district court.  See In re Milestone Scientific Sec. Litig., 187 F.R.D. 165, 176 (D.N.J. 1999).  The exercise of such discretion necessitates an inquiry into the appropriateness of the appointment of more than one law firm and an independent evaluation of, among other considerations, the effectiveness of the proposed counsel structure to ensure the protection of the class.  Vincelli v. Nat'l Home Health Care Corp., 112 F. Supp.2d 1309, 1315 (M.D. Fla. 2000).

Although there is no provision in the PSLRA for the appointment of "co-lead counsel," the statute does not expressly prohibit the lead plaintiff from selecting more than one law firm to represent the class.  See 15 U.S.C. § 78u-4(a)(3)(B)(v).  In certain situations, such as where one firm has a relationship with the client but lacks the resources or expertise to prosecute an action, the appointment of multiple lead counsel may better protect the interests of the plaintiff class.  The potential for duplicative services, leadership discord, and increased attorney's fees militate against the appointment of multiple law firms, however, especially in cases where one law firm has the proven ability to adequately manage and litigate securities class actions.  In re Party City Sec. Litig., 189 F.R.D. 91, 115 (D.N.J. 1999).  In addition, where more than one lead counsel is appointed, there is the potential that their coordinated handling of the litigation (assuming the best) or their fractious infighting (assuming the worst) could strip the lead plaintiff of control over the litigation, an occurrence the PSLRA intended to foreclose.  See Ballan v. Upjohn Co., 159 F.R.D. 473, 491 (W.D. Mich. 1994) (seven law firms representing class attempted to remedy deficiencies in class description without

ORDER REGARDING APPOINTMENT
OF LEAD PLAINTIFF AND LEAD COUNSEL - 5

obtaining client's approval of change which would adversely affect his interests).  The PSLRA was designed, in part, to effectuate the transfer of control of securities class actions from the lawyers to the investors.  Joint Explanatory Statement of the Committee of Conference, Conference Report on Securities Litigation Reform, H.R. REP. No. 369, at 31 (1995), *reprinted in* 1995 U.S.C.C.A.N. 679, 685.

       Although the Burrell Group is requesting the appointment of only two firms for purposes of this litigation, it makes no effort to explain why they need or desire to have both Hagens Berman and KGS to prosecute this case.  The Burrell Group's motion undermines the need to have both firms as co-lead counsel by stating, "Both firms are experienced in the area of complex litigation and class actions, and have successfully prosecuted securities litigations and securities fraud class actions on behalf of investors."  Burrell Group's Motion at p. 12.  Their memoranda do not set forth the role Hagens Berman and KGS will each play if approved.  In addition, while Hagens Berman has offices in Seattle, KGS does not, which could complicate the proceedings.  It is unclear which law firm, if either, has a relationship with the clients, and which one has taken the lead of researching and drafting the filings before the Court.  Finally, in light of the allegation that the Banner complaint was copied from a complaint previously filed on behalf of another party, a determination of the appropriate lead counsel must include an inquiry into which counsel drafted the complaint and whether sufficient effort went into that undertaking.

       For all of the foregoing reasons, the Court DENIES the motions to be appointed as lead plaintiff filed by the Ham Group (Dkt. #15), the Judah plaintiffs (Dkt. #20) and the Smith Group (Dkt. #21).  The Court will hold a hearing on March 5, 2008 at 8:30 a.m. regarding whether to appoint the Burrell Group, or some subset thereof, as lead plaintiff,

and regarding the appointment of lead counsel. The Burrell Group's counsel must attend the hearing. Defendant, other plaintiffs, and their counsel may attend if they so chose.

DATED this 12th day of February, 2008.

*[signature]*
Robert S. Lasnik
United States District Judge

ORDER REGARDING APPOINTMENT
OF LEAD PLAINTIFF AND LEAD COUNSEL - 7