UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

_____
                                          )
In re JONES SODA COMPANY                  )   No. C07-1366RSL
SECURITIES LITIGATION                     )
                                          )   ORDER DENYING PLAINTIFFS'
                                          )   MOTION TO AMEND COMPLAINT
                                          )
                                          )
_____)

This matter comes before the Court on "Plaintiffs' Motion for Leave to File Second Amended Consolidated Class Action Complaint." Dkt. # 83. On February 9, 2009, the Court dismissed plaintiffs' First Amended Consolidated Class Action Complaint because plaintiffs had failed to allege facts that raise a strong inference that any of defendants' statements were intentionally false or made with deliberate recklessness. Because drafting a cognizable complaint under the Private Securities Litigation Reform Act ("PSLRA") can be a matter of trial and error, the Court gave plaintiffs an opportunity to file a properly supported motion for leave to amend. Having reviewed the proposed second amended complaint and the memoranda of the parties, the Court finds as follows:

(1) Courts "should freely give leave [to amend] when justice so requires." Fed. R. Civ. P. 15(a)(2). There is a "strong policy in favor of allowing amendment" (Kaplan v. Rose, 49 F.3d 1363, 1370 (9th Cir. 1994)) after considering "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed,

ORDER DENYING PLAINTIFFS'
MOTION TO AMEND COMPLAINT

undue prejudice to the opposing party by virtue of allowance of the amendment, [and] futility of amendment" (Leadsinger, Inc. v. BMG Music Publ'g, 512 F.3d 522, 532 (9th Cir. 2008)). Defendants argue that plaintiffs' third iteration of their claims is futile because plaintiffs have not cured the deficiencies identified by the Court in its February 9, 2009, order.

(2)  Jones Soda is a manufacturer of premium sodas, bringing to market "quirky" flavors made with pure sugar cane and packaged using consumer-generated labels. In 2006, Jones Soda and its former Chief Executive Officer, Peter van Stolk, announced that Jones Soda would begin distributing 12-ounce cans of Jones Soda nationwide in an attempt to expand the company's presence in the $66 billion carbonated soft drink ("CSD") market. Plaintiffs, who purchased shares of Jones Soda between March 8, 2007, and March 10, 2008, allege that the price per share was inflated during that period because defendants (a) overstated the number of stores that had agreed to carry Jones Soda cans and the progress made in bringing cans to the market (Proposed Second Amended Complaint at ¶¶ 39, 40, 41, 46, 78, 87, and 95), (b) overstated its ability to capitalize on its retail connections (Proposed Second Amended Complaint at ¶¶ 34, 36, 41, 47, 62, 65, 75, and 91), and (c) failed to reveal problems Jones Soda encountered when selling, marketing, and promoting its product nationwide (Proposed Second Amended Complaint at ¶¶ 116, 119, and 121). The overall theory of the complaint is that defendants' statements and omissions were intended to, and did, create the false impression that "Jones Soda would be in a position to produce meaningful revenue from sales of canned soda." Proposed Second Amended Complaint at ¶ 7.

(3)  Plaintiffs have again failed to allege facts giving rise to a strong inference that defendants lied or were deliberately reckless. In order to determine whether the complaint is actionable under the PSLRA, the Court must assess the allegations "holistically," along with plausible nonculpable explanations for defendant's conduct. Tellabs, Inc. v. Makor Issues & Rights, Ltd., 551 U.S. 308, 127 S. Ct. 2499, 2509-10 (2007). Although "[t]he inference that

ORDER DENYING PLAINTIFFS'
MOTION TO AMEND COMPLAINT             -2-

defendant acted with scienter need not be irrefutable . . . [it] must be more than merely 'reasonable' or 'permissible' – it must be cogent and compelling, thus strong in light of other explanations. A complaint will survive . . . only if a reasonable person would deem the inference of scienter cogent and at least as compelling as any opposing inference one could draw from the facts alleged." Tellabs, 127 S. Ct. at 2510.

   (4) Plaintiffs allege that Jones Soda had not, despite its statements to the contrary, secured agreements that would put its canned sodas on the shelves of 25% of all retail outlets or reached anything close to that level of market penetration during the class period. No evidence regarding the agreements Jones Soda reached, or did not reach, with retail chains or the number of stores carrying cans of Jones Soda between May 2007 and March 2008 is provided. For the reasons set forth in the February 9, 2009, Order Granting Defendants' Motion to Dismiss, the Court finds unpersuasive plaintiffs' assertion that defendants' post-class period statements regarding market penetration were necessarily inconsistent with their earlier representations. Nor does the difficulty in measuring market penetration indicate intentional or reckless falsehoods: allegations of an opportunity to mislead the market do not raise a strong inference of scienter under the PSLRA. See Metzler Inv. GMBH v. Corinthian Colleges, Inc., 540 F.3d 1049, 1069 (9th Cir. 2008). Thus, plaintiffs' allegations of falsity and scienter rely solely on the fact that Jones Soda's can-related revenues did not increase as the market expected. From this fact, plaintiffs argue that the claim of 25% ACV must have been false.

   Jones Soda made no representations regarding can-related revenues. Plaintiffs (and the market) apparently assumed that if Jones Soda cans were on the shelves of 15,700 stores nationwide, there would be a net increase in revenues for the company. Because the expected revenues did not appear (see Proposed Second Amended Complaint at ¶ 124), plaintiffs conclude that the product was not actually on the store shelves and, going back even farther, that defendants had not secured agreements for 25% ACV penetration (Proposed Second Amended

Complaint at ¶ 125). Plaintiffs' conclusions may be reasonable, but they are not the only, or even the most plausible, explanations for the lack of net revenue associated with the canned soda initiative. The proposed complaint contains numerous facts which, taken together, adequately explain the disappointing returns without raising even a weak inference of scienter. Jones Soda was in the process of transforming itself from a niche player in the premium beverage market to a competitor in the $66 billion CSD market. The transformation engendered significant costs: not only did Jones Soda hire additional employees to oversee the roll out of the canned products, but it paid millions of dollars in slotting fees and promotional allowances. The transformation was neither instantaneous nor smooth. Despite the expenditures, Jones Soda was unable to generate nationwide demand for its product or to properly promote the cans on a store-by-store basis. Stores were reluctant to dedicate significant shelf space or premium locations to the new product and ultimately stocked and sold fewer cases per store than the market had hoped. Outsized expenditures coupled with disappointing sales will, of course, adversely affect revenues. This alternative explanation for the lack of increased revenues from the canned product line is more compelling than plaintiffs' hypothesis that defendants were simply lying in November 2006 when they announced they had secured 25% ACV agreements and throughout the year as they reported their percentage penetration. Plaintiffs have not, therefore, raised a strong inference of intentional or deliberately reckless falsehoods.

(5) Plaintiffs challenge the veracity of defendants' statements regarding their efforts to capitalize on Jones Soda's share of the ACV. See Proposed Second Amended Complaint at ¶¶ 34, 36, 41, 47, 62, 65, 75, and 91. Plaintiffs allege that "Jones Soda was not hiring additional personnel and making upgrades to infrastructure sufficient to 'position' itself to 'capitalize' on [the CSD] market." Proposed Second Amended Complaint at ¶ 35. Plaintiffs also challenge van Stolk's May 2007 statement that "We move forward with a strong management team and an entire organization dedicated to delivering long-term growth and profitability and increased

shareholder value." Proposed Second Amended Complaint at ¶ 65. Plaintiffs have not raised a strong inference that defendants' statements were false. Jones Soda hired a handful of people, paid slotting and marketing fees related to the rollout of its canned product, and had a management team in place (the relative strength of which may have been debatable, but the existence of which was not demonstrably false). Plaintiffs have not provided any evidence regarding Jones Soda's "infrastructure" or the dedication of the organization during the relevant time period. They have not, therefore, raised a strong inference that any of defendants' statements regarding their efforts to capitalize on Jones Soda's share of the ACV were false.

Nor can plaintiffs make defendants' statements false merely by giving them an expansive, but unreasonable, interpretation. Defendants never claimed that their investments were "sufficient" or "adequate" to ensure that the canned-soda initiative would be profitable or that they had made all "necessary" expenditures. Proposed Second Amended Complaint at ¶ 35, 48, and 140. At most, defendants reported what they had done (such as hiring additional personnel, increasing sales and marketing expenditures, and developing a "strong management team") and expressed their hope that they would be able to capitalize on the opportunities presented in the $66 billion CSD market. Defendants' statements did not imply a certain level of expenditure, provide misleading statements regarding expected revenue, or otherwise convey the guarantee of success that plaintiffs inferred. From general statements regarding unspecified expenditures on personnel, infrastructure, and marketing, plaintiffs assumed that defendants (a) knew what it would take to transform Jones Soda into the new Coca-Cola and (b) had taken all necessary steps to accomplish the transformation (or at least to generate significant profits in the short term). Defendants cannot, however, be held liable under the PSLRA for plaintiffs' wishful thinking.

(6) Finally, plaintiffs argue that Jones Soda failed to timely reveal that it lacked the sales, marketing, and promotional infrastructure to capitalize on its ACV agreements. Proposed

ORDER DENYING PLAINTIFFS'
MOTION TO AMEND COMPLAINT            -5-

Second Amended Complaint at ¶¶ 116, 119, and 121. Plaintiffs argue that the totality of defendants' statements during the class period "would have led a reasonable investor to believe that the 25% ACV achievement would drive increased revenues" (Proposed Second Amended Complaint at ¶ 121) and that it was therefore misleading not to disclose problems in the distribution pipeline, the shortcomings in the sales and marketing program, and that the plan for transforming Jones Soda into a major player in the CSD market was being developed "on the fly." The PSLRA does not require companies to disclose all information that an investor might deem relevant: rather, the statute prevents companies from misleading investors. Berson v. Applied Signal Tech., Inc., 527 F.3d 982, 987 (9th Cir. 2008). Plaintiffs have failed to allege specific contemporaneous statements that were deliberately misleading when made (Ronconi v. Larkin, 253 F.3d 423, 432 (9th Cir. 2001)) and instead ask the Court to infer scienter from problems that developed as Jones Soda sought to enter the CSD market. As discussed above, plaintiffs' assumption that 25% ACV participation would automatically translate into increased profits was unreasonable. Plaintiffs have not identified any contemporaneous statements regarding expected revenues or any details regarding Jones Soda's distribution, management, or marketing plans. At the time plaintiffs chose to invest in Jones Soda, defendants had provided almost no information regarding their transformational plan: all plaintiffs knew was that Jones Soda had agreements to place at least one can of soda in approximately 15,700 stores nationwide. Because the details of the transformational plan were never revealed, plaintiffs are unable to connect the alleged non-disclosures with any statement regarding the canned-soda initiative. Defendants' post-class period statements do not raise a strong inference of intentional falsehoods or deliberate recklessness during the class period.

(7) The Proposed Second Amended Complaint contains numerous allegations which could support an inference that defendants intentionally misled the market. Nevertheless, when the allegations are taken together, plaintiffs' preferred inference is not as cogent or compelling

ORDER DENYING PLAINTIFFS'
MOTION TO AMEND COMPLAINT            -6-

as a plausible alternative explanation – namely, that defendants' plan to transform Jones Soda from a regional player in a niche market into a rival of Coca-Cola and Pepsi in the nationwide CSD market had significant holes which ultimately sabotaged the effort, leaving Jones Soda with increased costs that were barely offset by an increase in sales. More allegations regarding post-class period statements or financial reporting problems will not strengthen the inference of falsity or scienter so as to satisfy the PSLRA pleading standard. Because the Court finds that the proposed amendment would be futile and there is no indication that plaintiffs can supply the requisite particularity, plaintiffs' request for leave to amend is DENIED and this matter is DISMISSED. The Clerk of Court is directed to enter judgment in favor of defendants and against plaintiffs.

Dated this 22nd day of June, 2009.

*Robert S. Lasnik*
Robert S. Lasnik
United States District Judge